**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 07-1382**

───────────────

DENA BOWERS,

                                        Plaintiff - Appellant,

        versus

NAT SCURRY, in his official and individual
capacity; LUCINDA CHILDS-WHITE, in her
official and individual capacity,

                                        Defendants - Appellees,

        and

UNIVERSITY OF VIRGINIA, by its Rector and
Visitors; LEONARD SANDRIDGE, in his official
capacity as executive vice president and chief
operating officer of the University of
Virginia, and in his individual capacity; YOKE
SAN REYNOLDS, in her official capacity as
chief financial officer of the University of
Virginia, and in her individual capacity,

                                        Defendants.

───────────────

Appeal from the United States District Court for the Western
District of Virginia, at Charlottesville. Norman K. Moon, District
Judge. (3:06-cv-00041-nkm)

───────────────

Argued: March 19, 2008                    Decided: May 2, 2008

───────────────

Before DUNCAN, Circuit Judge, HAMILTON, Senior Circuit Judge, and William L. OSTEEN, Jr., United States District Judge for the Middle District of North Carolina, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Deborah Chasen Wyatt, WYATT & ARMSTRONG, P.L.C., Charlottesville, Virginia, for Appellant. Richard Croswell Kast, UNIVERSITY OF VIRGINIA, Charlottesville, Virginia, for Appellees. **ON BRIEF:** Paul J. Forch, General Counsel and Special Assistant Attorney General, Margaret A. Browne, Barry T. Meek, UNIVERSITY OF VIRGINIA, Office of General Counsel, Charlottesville, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dena Bowers ("Bowers"), a former employee of the University of Virginia ("University") Human Resources division, brought this action against the school and various University officials after she was fired for using her University email account to disseminate information regarding the potential impact on University employees of pending salary restructuring, and for her refusal to assist in the University's investigation into the source of that information. The district court granted summary judgment in favor of the University and its officials, and this appeal followed. For the reasons that follow, we affirm.

I.

In reviewing the granting of a motion for summary judgment, we view the facts in the light most favorable to the non-moving party, here, Bowers. See Holland v. Washington Homes, Inc., 487 F.3d 208, 213 (4th Cir. 2007).

At the time of the events in question, the University of Virginia was supporting legislation that would allow it greater autonomy in the area of human resources. Bowers, while employed at the University, sent an email message to a colleague using her University email account and bearing a signature stamp identifying

her as a University Human Resources employee.[1]  Attached to the message were documents and charts that Bowers had received during a meeting of the local chapter of the National Association for the Advancement of Colored People ("NAACP").  The attachments purported to portray the likely results of the salary restructuring initiatives (or "decentralization"), and reflected the NAACP's opposition to the pending legislation supported by the University. The attachments consisted of four separate documents with different file names.  Although the first attachment had a cover page stating that it was prepared by the local chapter of the NAACP, there was no similar cover on the remaining three attachments.

After receiving the email and attachments, the colleague sought and received Bowers's permission to forward them to an unknown number of University employees.  Neal Grandy, one such second-tier recipient, forwarded the email and attachments on anew, with the following note: "You might want to pass this along, as it seems HR is circulating this (and Dena Bowers, who did the breakdown for HR, said it was okay to forward.)  This appears to be the compensation package we'll be getting with decentralization. It does not seem to be good news."  J.A. 106.  As that employee subsequently testified, "I did not know Ms. Bowers, but noted that

---

[1]The Commonwealth of Virginia maintained an internet use policy that required employees to identify personal communications sent from Commonwealth systems as personal, to prevent them from being viewed as official communications.  J.A. 635.

4

from her original e-mail that she was an employee of the University's Human Resources, or 'HR' division, so I assumed that the information she had sent was HR information about restructuring." J.A. 105. Another recipient forwarded the email to a Listserv of University staff. Shortly thereafter, Grandy began to receive questions and expressions of concern. J.A. 106.

When Bowers learned that some recipients had perceived her email as official correspondence, she made an effort to clarify that the attachments were from the NAACP, not the University Human Resources office. She communicated as much to the colleague to whom she had originally sent the email, and in response to a request from another one of the recipients, stressing the distinction between sending the message and attachments "in [her] capacity as an NAACP member" instead of as a University employee. J.A. 240-41; see also J.A. 106.

Several days after Bowers sent the email noted above, she spoke by telephone with appellees Lucinda Childs-White ("Childs-White") and Nat Scurry ("Scurry"), two of Bowers's supervisors, and appellee Yoke San Reynolds ("Reynolds"), the chief financial officer of the University, among others. Reynolds told Bowers that her email contained significant inaccuracies and had caused confusion and disruption in the workplace. Reynolds asked several questions of Bowers, including to whom she sent the information, and where it originated. Bowers answered some of the questions,

but refused to explain where the information used to create the NAACP documents came from; she maintained that the University had no right to demand that information.[2]

The day after this telephone conversation, Bowers met with Scurry and Childs-White for a "predetermination meeting," J.A. 142-43, to decide whether Bowers's conduct warranted disciplinary action. Scurry and Childs-White again met with Bowers approximately one month later, on November 17th, 2005, in what Childs-White characterized as a "second predetermination meeting." J.A. 143-44. At that point, Bowers was placed on paid leave until November 22nd. Bowers was told that a third meeting would take place on November 22nd, at which Bowers would have an opportunity to "present a defense." J.A. 238. According to Bowers, and accepted as true for purposes of our review, on the day before the hearing Bowers asked Scurry to specify the charges against her, but Scurry failed to respond. That evening, however, Bowers acknowledged receiving "information indirectly and from a totally different source concerning at least the nature of the alleged charges being leveled against her, although the information was still highly non-specific." J.A. 17 (Compl. ¶ 40). At the conclusion of the meeting on the 22nd, the University terminated

---

[2]Bowers later claimed to have received certain salary information from Aretha Spears, a medical center employee. J.A. 605. However, Spears testified that she did not give Bowers any such information. J.A. 194.

Bowers's employment.  The reasons given for the termination were Bowers's distribution of the email and her refusal to provide assistance in identifying the source of what the University identified as the substantively inaccurate information it contained.

## II.

Bowers filed this action in Virginia state court, alleging violations of her First Amendment rights of free speech and free association, a denial of her due process rights, and state law claims.  The defendants removed the case to federal court.  The district court dismissed the state law claims and Bowers's due process claim insofar as it alleged that she had received inadequate notice before the University terminated her employment.  Following discovery, the district court granted summary judgment on all of Bowers's remaining claims except her due process claim insofar as it alleged that Bowers had been deprived of an opportunity to be heard.  Bowers thereafter waived her remaining due process claim.

On appeal, Bowers challenges the district court's grant of summary judgment in favor of the University and its officials on Bowers's First Amendment claims and the dismissal of Bowers's due process claim relating to allegations of inadequate notice.  We review these issues de novo.  See Holland, 487 F.3d at 213.

A.

Bowers argues that the email and attachments sent from her work computer constituted protected speech, and that the University violated her free speech rights by firing her, in part, for sending it.  We disagree.

In Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292 (4th Cir. 2006), this court reiterated the test, first set forth in McVey v. Stacy, 157 F.3d 271 (4th Cir. 1998), to be used in analyzing whether a public employee has proven that a retaliatory action taken by her employer violated her free speech rights:

> First, the public employee must have spoken as a citizen, not as an employee, on a matter of public concern. Second, the employee's interest in the expression at issue must have outweighed the employer's interest in providing effective and efficient services to the public. Third, there must have been a sufficient causal nexus between the protected speech and the retaliatory employment action.

Ridpath, 447 F.3d at 316 (internal citations and quotations omitted).

Under McVey's second prong, we find that the University's "interest in providing effective and efficient services to the public" strongly outweighs Bowers's "interest in the expression at issue."  Id.  Bowers violated a state policy limiting the sending of personal email from state accounts and computers.  This policy bolstered the University's attempts to manage the dissemination of information from University accounts and computers, part of its broader attempt to provide "effective and efficient services to the

public," id.[3]  Bowers's interest in the expression at issue, while not insubstantial, fails to tilt the balance in her favor. Accordingly, we hold that Bowers's speech was not entitled to First Amendment protection under McVey's second prong.  McVey, 157 F.3d at 277; Ridpath, 447 F.3d at 316.

## B.

Bowers next claims that the University violated her First Amendment rights by discharging her, in part, for refusing to answer her supervisors' questions about the source of the information contained in the attachments.  She argues that this was tantamount to retaliating against her for her association with the NAACP.  The district court agreed, but held that the right at issue was not "clearly established," and that, therefore, the University's action was protected by qualified immunity.  See Conn v. Gabbert, 526 U.S. 286, 290 (1999) ("[A] court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine

---

[3]The University's interest in providing effective and efficient services to the public was severely hampered in this case by Bowers's actions.  The inclusion of Bowers's title--"UVA Human Resources Recruiter"--gave recipients of her message the mistaken impression that Bowers sent the information as part of her job-related activity.  As a result, the email was likely to, and in fact did, generate considerable confusion among recipients. Indeed, one of the University recipients testified that he assumed that the information came from Bowers in her capacity as a University Human Resources employee.  The confusion generated by Bowers's email was not alleviated by the cover sheet accompanying the first attachment.

whether that right was clearly established at the time of the alleged violation.").

We do not reach the "clearly established" prong of qualified immunity, however, concluding instead that Bowers failed to assert a viable freedom of association claim as a threshold matter. It is not open to debate that the University could not ask Bowers about NAACP membership information. See NAACP v. Alabama, 357 U.S. 449, 466 (1958). That, however, is not what happened here. Rather, Bowers was questioned about the source of the compensation and benefits information the attachments described as being in place at the University. Bowers points to no authority, nor are we able to find any, that would prevent such an inquiry. On its face, the information must have originated from the school--not the NAACP-- and the medical center worker from whom Bowers claimed to have obtained the information denied having provided it to her. On these facts, the University did not violate Bowers's First Amendment rights in seeking to ascertain the internal source of what it reasonably believed to be false and potentially harmful data about its own compensation structure.

### C.

Bowers also argues that the University violated her due process right to adequate notice. The University was required to provide Bowers with timely oral or written notice describing the nature of the charges and the general evidence against her. See

<u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985). Bowers acknowledges that University officials spoke with her by telephone and asked her about the email, and that she was provided a copy of the email.  She attended two in-person meetings with University officials prior to her termination, at which the contents and the impact of the email were discussed.  It is unclear what other information about the University's concerns Bowers expected.  Under these circumstances, we are compelled to agree with the district court's assessment "[t]hat there is simply no question that [Bowers] was aware of the conduct giving rise to her dismissal."  <u>Bowers v. Rector and Visitors of the Univ. of Va.</u>, 478 F. Supp. 2d 874, 889 (W.D. Va. 2007).[4]

III.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.

---

[4]Bowers also asserts that the district court erred in its finding that Sandridge and Reynolds were not involved in her firing, and that the court erred in dismissing the University as a defendant.  Bowers also challenges the district court's striking of certain emails from evidence for lack of authentication.  In light of our holdings, <u>supra</u>, that Bowers's email was not protected speech, that she failed to assert a viable free association claim, and that her due process rights were not violated, we find it unnecessary to reach these issues.  We have examined her other arguments, and find them to be without merit.

11